IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UBS FINANCIAL SERVICES, INC.,
and UBS FINANCIAL SERVICES
INC. OF PUERTO RICO

      Petitioners,

vs.

RAFAEL VIZCARRONDO and MERCEDES
IMBERT DE JESUS

      Respondents.

**Civil Case No: 16-03220 (PAD)**

## RESPONDENTS' OPPOSITION TO PETITIONERS' MOTION TO VACATE AND IN SUPPORT OF RESPONDENTS' MOTION TO CONFIRM

Timothy J. Dennin, Esq. (admitted pro hac vice)
**TIMOTHY J. DENNIN, P.C.**
316 Main Street
Northport, New York 11768
Telephone (631) 261-0250
Facsimile (631) 261-0395

**ANDREU & SAGARDIA**
261 Ave. Domenech
San Juan PR 00918
Telephone (787) 754-1777
Facsimile (787) 763-8045

José A. Andréu García
USDC-PR 110304

José A. Andréu Fuentes
USDC-PR 204409

Pedro J. López Bergollo
USDC-PR 231412

Attorneys for Respondents

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

I. INTRODUCTION ..................................................................................................... 1

II. THE PARTIES ........................................................................................................... 2

III. STATEMENT OF FACTS ......................................................................................... 5

IV. LEGAL ARGUMENT…………………………………………………………………….5

    A. UBS Has Waived its Right to Complain About Any Arbitrators' Non-Disclosure and Purported Partiality and Denial of a Fundamentally Fair Hearing ............................... 6

        i. UBS's Failure to Meet the Minimum Standard of Diligence .................................... 6

    B. Even if UBS's Claims are Not Waived They Fall Woefully Short of the FAA Standards to Vacate a Three Panel Unanimous Arbitration Award ............................ 9

    C. The Arbitrators Disclosed All Pertinent Information and Any Purported Non-Disclosures or Misstatement Were Immaterial .......................................................... 12

    D. UBS's Post Award Attack on Dr. Meek is Factually Inaccurate and Misleading and Does Not Meet the Stringent FAA Standards For Vacatur ........................................ 14

    E. UBS's Post Award Attack on Chairman Wright Likewise has no Merit .................. 22

    F. Petitioners' Authorities are Distinguishable ............................................................. 26

    G. UBS Should Be Judicially Estopped From Taking Inconsistent Positions ................ 29

    H. Respondents Should be Awarded Interest and Sanctions in the Form of Attorneys' Fees and Costs .......................................................................................................... 30

CONCLUSION ................................................................................................................. 32

# TABLE OF AUTHORITIES

## Federal Cases

*Airline Pilots Ass'n, In'l v. Pan Am Airways Corp.,* 405 F.3d 25 (1st Cir. 2005) ........................... 5

*ALS & Assococs., Inc.v. AGM Marine Constructors, Inc.*, 557 F. Supp. 2d 180 (D. Mass. 2008) ........................................................................................................... 10

*ANR Coal Co. v. Cogentrix of N.C., Inc.,* 173 F.3d 493 (4th Cir. 1999) ...................................... 10

*Antietam Industries, Inc. v. Morgan Keegan & Co. Inc.*, 2013 WL 1213059 (M.D. Fla. 2013)........................................................................................................... 22

*Apex Fountain Sales, Inc. v. Kleinfeld,* 818 F.2d 1089 (3rd Cir. 1987)........................................ 21

*Association De Empleados Del Estado Libre Asociado De Puerto Rico v. UBS Financial Services, Inc. and UBS Financial Services Inc. of Puerto Rico,* Civil No. 16-02237 (PAD) ........................................................................................................................ passim

*B.L. Harbert International L.L.C. v. Hercules Steel* Co., 441 F.3d 905 (11th Cir. 2006) ............. 31

*Bull HN Info. Sys. Inc. v. Hutson*, 229 F.3d 321 (1st Cir. 2000) .................................................... 5

*Cindy-Marie Rodgers v. Asudal Financial* Partners, 168 F. Supp.3d. 378 (D. Mass. 2016)........ 25

*Citigroup Global Markets, Inc. v. Berghorst*, 2012 WL 5989628 (S.D. Fl. Jan. 20, 2012) ......... 28

*CM South v Careminders*, 2016 WL 5859695 (1st Cir.) ....................................................... 22, 31

*Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145 (1968) .................. 20

*Delta Mine Holding Co. v. AFC Coal Props., Inc.,* 280 F.3d 815 (8th Cir. 2001).................. 10, 21

*Doral v. García-Vélez,* 725 F.3d. 27 (1st Cir. 2013) ............................................................. 20, 23

*Florasynth, Inc. v. Pickholtz*, 750 F.2d 171 (2nd Cir. 1984) ....................................................... 24

*Fornell v. Morgan Keegan*, Case No. 6:12-CV-0038-JA-GJK (M.D. Fla. 2012) ........................ 31

*Fort Hill Builders, Inc. v. Nat'l Grange Mut. Ins. Co.*, 866 F.2d 11 (1st Cir. 1989)................ 6, 31

*Frazier v. Citifinancial*, 604 F3d 1313 (11 Cir. 2010)................................................................. 31

*Freeman v. Pittsburgh Glass Works, L.L.C.*, 709 F.3d 240 (3rd Cir. 2013)................................. 24

*Goldman Sachs & Co. v. Athena Venture Partners, L.P.*, 803 F.3rd 144 (3rd Cir. 2015).............. 7

*Goldman Sachs & Co. v. Athena*, 13 – MC 130 (E.D. Pa. Aug. 1, 2013); rev'd
    803 F.3d 144 (3rd Cir.2015) ................................................................................. 26

*Hall Street Associates. L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008) ............................... 9

*InterGen N.V. v. Grina*, 344 F.3d 134 (1st Cir. 2003) .................................................. 30

*JCI Communications Inc. v. International Brotherhood of Elec. Workers*, 324 F.3d 42
    (1st Cir. 2003) ........................................................................................................ 6, 24

*Kathleen Guerra v. Teradyne, Inc., George Chamillard and Michael A. Bradley*,
    Civil Action No. 01-11789 (D. Mass. 2001) ............................................................ 22

*Kiewit/Atkinson/Kenny v. Int'l Bhd of Elec, Workers, Local 103*, 76 F.Supp.2d 77
    (D.Mass. 1999) ........................................................................................................ 24

*Lifecare Intern*, 68 F.3d 429 (11th Cir. 1995) ............................................................. 28

*Lucent Techs. Inc. v. Tatung Co.*, 379 F.3d 24 (2d Cir 2004) ........................................ 7

*Lumber Liquidators, Inc. v. Sullivan*, CIV.A. 10-11890-NMG. 2001 WL 5884252
    (D. Mass. Sept. 27, 2011) ................................................................................... 24, 25

*Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673 (7th Cir.1983) .......................... 8, 10

*Move, Inc. v. Citigroup*, 840 F.3d 1152 (9th Cir. 2016) ............................................... 27

*Nationwide Mut. Ind. Co. v. First State Ins. Co.*, 213 F. Supp. 2d 10 (D. Mass. 2002) .............. 10

*New Hampshire v. Maine*, 532 U.S. 742 (U.S. Supreme Ct. 2001) ............................... 30

*Ortiz- Espinosa v. BBVA Securities of PR*, 2017 WL 343525 (1st Cir. Decided
    January 20, 2017) ..................................................................................................... 5

*Paper Allied-Industrial v. S.D. Warren Co.*, 382 F. Supp. 2d 130 (D. Maine 2005) .................... 5

*Philips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) .................................................. 22

*Popular Securities v. Colon*, 59 F. Supp. 3d 316 (D.P.R. 2014) ..................................... 9

*Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 476 F.3d 278
    (5th Cir. 2007) ......................................................................................................... 25

*Ramos-Santiago v. United Parcel Service*, 524 F.3d 120 (1st Cir. 2008) ....................... 5

*Rosen Capital Partners LP v. Merrill Lynch Professional Clearing Corp.*, 2013 WL 428460 (Ca. App., 2 Dist. Feb. 5, 2013) ........................................................... 24

*Standard Fire Ins. Co. vs. Knowles,* 133 S.Ct. 1345 (2013)........................................ 22

*Scott v. Prudential Securities, Inc.,* 141 F.3d 1007 (11th Cir. 1998)............................ 22

*Stivers v. Pierce*, 71. F.3d. 732 (9th Cir. 2014) ............................................................ 28

*STMicroelectronics, N.V. v. Credit Suisse Securities (USA) LLC*, 648 F.3d 68 (2nd Cir. 2011) ................................................................................................ 19

*Stone v. Bear Stearns & Co., Inc.*, 872 F.Supp.2d 435 (E.D. Pa. May 29, 2012) ................... 7, 18

*United States of America v. George Meredith Bishop*, 264 F.3d 535 (4th Cir. 2001).................. 17

*United Steel Workers of Am. Local 12003 v. Keyspan Energy Delivery*, No. CIV.A. 08-11928-GAO, 2009 WL 2422865 (D.Mass. August 3, 2009)................................ 24

*Western Employers Ins. v. Jeffries Co*, 958 F2d 258 (9th Cir. 1992) ............................ 27

*Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584 (2nd Cir. Jan. 28, 2016) ...................... 11

**State Cases**

*DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670 (Tex. 1990) ........................................ 15

*Meek v. Bishop Peterson & Sharp, P.C.*, 919 S.W.2d 805 (Tex. 1996) ........................ 16

*Municipal Workers Comp. Fund v. Morgan Keegan*, 190 So. 3d. 895 (Ala. Apr. 3, 2015)......... 27

*Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183 (Tex. 1977)............................... 15, 17

*Susan B. Meek, M.D., J.D. v. Cooper, Vorster And Hogsdon, A Partnership A/K/A Eye Contact, Inc.*, Harris County District Court Case No. 91-24358 .............................. 15

*Thomas James Associates, Inc. v. Owens*, 1 S.W.3d. 315 (Tex. App. 1999) .............................. 20

**Statutes and Regulations**

17 C.F.R. §240.10b-5........................................................................................ 23

9 U.S.C. §10........................................................................................... 10, 20

9 U.S.C. §10(a)(2) ............................................................................................ passim

9 U.S.C. §10(a)(3) ............................................................................................ passim

15 U.S.C. §78j(b) ..................................................................................................... 23

15 U.S.C. §78(t)(a) ................................................................................................... 23

FAA §10(a)(4) .................................................................................................... 21, 27

§10(b) of Securities Exchange Act 1934 ................................................................. 22

§20(a) of Securities Exchange Act of 1934 ............................................................. 22

## FINRA Rules

FINRA Rule 12405 ............................................................. 10, 18, 19, 20, 21, 23

## Other Authorities

*Chevres v. UBS Financial Services Inc. of Puerto Rico and UBS Financial Services, Inc.*,
   FINRA Case # 14-02995 (June 29, 2016) .................................................................. 4

*Chipi v. UBS Financial Services, Inc. and UBS Financial Services Inc. of Puerto Rico*,
   FINRA Case # 14-02683 (Dec. 24, 2015) .................................................................. 4

*Gonzalez v. UBS Financial Services Inc. of Puerto Rico and UBS Financial Services, Inc.*,
   FINRA Case # 14-00304 (August 11, 2015) .............................................................. 4

*Lopez Del Valle v. UBS Financial Services Inc. of Puerto Rico and UBS Financial
   Services, Inc.*, FINRA Case # 13-03784 (Aug. 31, 2015) ......................................... 4

*Lopez v. UBS Financial Services Inc. and UBS Financial Services of Puerto Rico*,
   FINRA Case # 14-01541 (Feb. 18, 2016) .................................................................. 4

*Merced, et al. v. UBS Financial Services Inc. and UBS Financial Services of Puerto Rico*,
   FINRA Case # 14-03016 (March 24, 2016) ............................................................... 4

*Mudafort v.UBS Financial Services Inc. of Puerto Rico and UBS Financial Services, Inc.*,
   FINRA Case # 14-00657 (September 10, 2015) ........................................................ 4

*Riera v.UBS Financial Services Inc. of Puerto Rico and UBS Financial Services, Inc.*,
   FINRA Case # 15-00295 (September 8, 2016) .......................................................... 4

*Robles v. UBS Financial Services Inc. of Puerto Rico and UBS Financial Services, Inc.*,
    FINRA Case # 15-01774 (November 4, 2016) .......................................................................... 4

*Roldan v. UBS Financial Services, Inc. and UBS Financial Services Inc. of Puerto Rico*,
    FINRA Case #14-01649 (Dec. 18, 2015).................................................................................. 4

*Texas Pattern Jury Instructions* .................................................................................................... 17


*www.finra.org/arbitration-and-mediation/arbitration-awards.* ....................................................... 4

## I. INTRODUCTION

Rafael Vizcarrondo and Mercedes Imbert de Jesus (colectively "Respondents") submit this memorandum of law in opposition to the motion of UBS Financial Services, Inc., and UBS Financial Services Inc. of Puerto Rico (collectively "UBS" or "Petitioners") to vacate the arbitration award issued on December 5, 2016 by a unaminous panel of three arbitrators (the "Panel") before the Financial Industry Regultory Authority ("FINRA") (the "Final Award").[1] The claims asserted in the arbitration included common law and breach of Puerto Rico statutes regarding proprietary UBS closed-end funds ("CEFs"). (*See* Final Award Ex. A to Petitioner's Decl.).

The Final Award was a culmination of fifty hearing sessions in which thirteen witnesses testified (including the Chairman and President of UBS Financial Services Inc. of Puerto Rico ("UBSPR"), Head of Wealth Management for UBSPR and four experts), thousands of pages of exhibits were introduced and extensive pre-hearing and post hearing memoranda were submitted. As reflected in the Final Award, the trial of this more than two yearlong proceeding commenced on March 14, 2016 and was finally completed on October 29, 2016. UBS presented all the evidence it wished to offer, called and examined all the witnesses whose testimony it sought, and made all of its arguments before an experienced and impartial panel. This prolonged arbitration proceeding was not only extremely costly to prosecute, but also exacted a physical and emotional toll on Respondents.[2] Now, only after receiving an adverse decision, Petitioners concoct a post-hac accusation that two of the arbitrators failed to disclose or misstated decades old information

---

[1] The Final Award is attached as Exhibit A to Petitioners' request that this court vacate the unanimous decision of the Panel.

[2] See Final Award awarding Respondents $163,000 in expert fees and testimony of Respondent Rafael Vizcarrondo and statements by UBS counsel regarding Mr. Vizcarrondo's (who is 80 years old) poor health and stress throughout the grueling fifty hearing session trial which, as UBS knows, Respondents may not physically be able to do again. (Dennin Decl. Ex. 1).

and, therefore, were not "impartial" which ignores the relevant standard, mischaracterizes the record, and inappropriately disparages two distinguished arbitrators who, as acknowledged by Respondents, provided the parties with a fundamentally fair hearing. (See pg. 12 herein).

UBS misstates and omits material facts in a hopeless and baseless attempt at an unwarranted do over.[3] Most damning to UBS is that Petitioners know that the "arguments" raised in the instant motion are without merit and contrary to controlling law. As detailed hereafter, in the case of *Association De Empleados Del Estado Libre Asociado De Puerto Rico ("AEELA") v. UBS Financial Services, Inc. and UBS Financial Services Inc. of Puerto Rico*, Civil No. 16-02237 (PAD), UBS is opposing a motion to vacate presently pending before the Hon. Pedro Delgado with similar facts regarding purported non-disclosures of arbitrators raised only after the award was rendered. In UBS's July 15, 2016 memorandum of law filed in the AEELA case, UBS basically adopts Respondents' arguments in this case and cites controlling law (including United States Supreme Court authority which UBS ignored in the present motion and binding First Circuit authority) that is directly <u>contrary</u> to the legally invalid arguments asserted here. The same counsel represents UBS in AEELA as in the instant case. Not only is UBS judicially estopped in this case from asserting these irreconcilably conflicting and legally unsound arguments but such dilatory conduct constitutes knowing bad faith warranting attorneys' fees, costs and sanctions under the Federal Rule of Civil Procedure 11 ("Rule 11 sanctions").

## II.     THE PARTIES

Petitioner UBS Financial Services Inc. is a corporation organized and existing under the laws of Delaware with its principal places of business in New York, New York and Weehawken,

---

[3] UBS's factual misstatements and omissions regarding the three proceedings concerning two of the arbitrators (going back as far as 1991 or 26 years ago) are detailed hereafter on pgs.14-25.

New Jersey.  According to UBS's Consolidated Statement of Financial Condition as of June 30, 2016 (unaudited), UBS had a total of $15,493,000,000 in assets.  (Dennin Decl. Ex. 2).

Petitioner UBSPR is a wholly-owned subsidiary of UBS Financial Services Inc., and is incorporated under the laws of the Commonwealth of Puerto Rico with its principal place of business in San Juan, Puerto Rico.  UBS has been the subject of several recent regulatory actions regarding the sale of its proprietary closed-end funds, including:

### SEC Administrative Proceeding

In the Matter of UBSPR, SEA Rel. No. 34-66893 (May 1, 2012).  UBS PR censured and ordered to pay disgorgement of $11.5MM, prejudgment interest of $1.1MM and a civil penalty of $14MM in connection with the sale of CEFs.

### Commissioner of Financial Institutions for the Commonwealth of Puerto Rico ("OCFI")

UBS Financial Services Incorporated of Puerto Rico Settlement Agreement (October 9, 2013).  Case involved CEFs. UBS paid to certain investors aggregate restitution of $1.681MM and made a $3.5MM contribution to OCFI towards the Securities Trading, Investor Education and Investigation Fund.

### Financial Industry Regulatory Authority

Letter of Acceptance, Waiver and Consent No. 20130391421101 (Sept. 29, 2015). FINRA brought an enforcement action relating to CEFs. UBS consented to a censure, a $7,500,000 fine and restitution to 165 customers in the amount of $10,978,402 to settle this matter.

### SEC Administrative Proceeding

In the Matter of UBSPR, SEA Rel. No. 34-76013 (Sept. 29, 2015).  SEC enforcement action against UBS PR alleging a fraudulent scheme involving the use of proceeds of non-purpose lines of credit to purchase CEFs.  UBS-PR settled this enforcement action by agreeing to pay disgorgement of $1.188MM, prejudgment interest of $174K and a civil penalty in the amount of $13.637MM.

UBS has lost twenty out of twenty three FINRA customer claims that have been decided by an arbitration award after final hearing.[4] Thus, the result in the Vizcarrondo action was not "shocking" or "contrary to the evidence", but consistent with the numerous regulatory and over a thousand FINRA customer proceedings filed against UBS for its egregious conduct in connection with its sale and recommendation to hold UBS proprietary CEFs.

Respondents Rafael Vizcarrondo and Mercedes Imbert De Jesus are husband and wife and lifelong residents of Puerto Rico. After graduating law school in 1962, Mr. Vizcarrondo began his career as an associate at Fiddler, Gonzales & Rodriguez, P.S.C. Mr. Vizcarrondo was elected managing partner of the firm in 1984 and remained in that capacity until he retired in 2007. During his long and distinguished career, Mr. Vizcarrondo was involved in many civic affairs and served, at the request of the United Nations Security Council, as a magistrate to determine compensation for victims in the Iraq-Kuwait war of 1990-91.

---

[4] All of these awards are available through FINRA's website *www.finra.org/arbitration-and-mediation/arbitration-awards*. In ten out of twenty of these publicly available awards, panels awarded not only compensatory damages but attorneys' fees, costs, interest, or all. *See Merced, et al. v. UBS Financial Services Inc. and UBS Financial Services of Puerto Rico*, FINRA Case # 14-03016 (March 24, 2016) (Unanimous decision awarding attorneys' fees, prejudgment interest and costs); *Lopez v. UBS Financial Services Inc. and UBS Financial Services of Puerto Rico*, FINRA Case # 14-01541 (Feb. 18, 2016) (Unanimous decision awarding $250,000 in attorneys' fees (under PR Uniform Sec Act §890(a)(2)), expert fees and costs); *Chipi v. UBS Financial Services, Inc. and UBS Financial Services Inc. of Puerto Rico*, FINRA Case # 14-02683 (Dec. 24, 2015) (Unanimous decision awarding $250,000 in attorneys' fees and costs); *Roldan v. UBS Financial Services, Inc. and UBS Financial Services Inc. of Puerto Rico*, FINRA Case #14-01649 (Dec. 18, 2015) (Unanimous decision awarding 1/3 contingency attorneys' fees of $333,333, prejudgment interest and costs); *Lopez Del Valle v. UBS Financial Services Inc. of Puerto Rico and UBS Financial Services, Inc.*, FINRA Case # 13-03784 (Aug. 31, 2015) (Chairwoman Frances Johnson-Wright) (Unanimous decision awarding $478,000 in attorneys' fees, prejudgment interest and expert fees); *Chevres v. UBS Financial Services Inc. of Puerto Rico and UBS Financial Services, Inc.*, FINRA Case # 14-02995 (June 29, 2016) (Unanimous decision awarding Attorneys' fees, prejudgment interest and expert fees); *Mudafort v.UBS Financial Services Inc. of Puerto Rico and UBS Financial Services, Inc.*, FINRA Case # 14-00657 (September 10, 2015) (Arbitrator John D. Mattingly) (Unanimous decision awarding Prejudgment interest); *Gonzalez v. UBS Financial Services Inc. of Puerto Rico and UBS Financial Services, Inc.*, FINRA Case # 14-00304 (August 11, 2015) (Unanimous decision Post judgement interest); *Riera v.UBS Financial Services Inc. of Puerto Rico and UBS Financial Services, Inc.*, FINRA Case # 15-00295 (September 8, 2016) (Unanimous decision Post judgment interest); *Robles v. UBS Financial Services Inc. of Puerto Rico and UBS Financial Services, Inc.*, FINRA Case # 15-01774 (November 4, 2016) (Unanimous decision awarding $145,000 in attorneys' fees under PR Uniform Sec Act §890 and costs). *See* Quinones Decl. Ex. C footnote 2.

## III.    STATEMENT OF FACTS

In its petition, UBS cites extremely select and out of context snippets of testimony from the record and in a distorted effort, attempts to portray the Final Award as "contrary to the evidence" and then concludes, without any citation evidencing arbitrator bias in the record, that such a result "must mean" that the arbitrators were biased and that UBS was deprived of a fundamentally fair hearing. (Pet. at ¶26).

UBS did not attach the complete record of the hearing testimony nor any of the thousands of pages of exhibits introduced.   A party seeking vacatur has the burden of providing the reviewing court with a record sufficient to permit the exercise of an informed judgement in accordance with the applicable extremely narrow scope of review.  *See Paper Allied-Industrial v. S.D. Warren Co*., 382 F. Supp. 2d 130, 139-40 (D. Maine 2005).   As stated in the recent First Circuit decision of *Ortiz- Espinosa v. BBVA Securities of PR*, 2017 WL 343525 (1st Cir. Decided January 20, 2017) "[T]his limited review applies '[e]ven when the such error is painfully clear, [because] *courts are not authorized to reconsider the merits of arbitration awards*" (emphasis added).[5]

## IV.    LEGAL ARGUMENT

A federal court's review of an arbitrator's   decision is "extremely narrow and exceedingly deferential."  *Airline Pilots Ass'n, In'l v. Pan Am Airways Corp.,* 405 F.3d 25, 30 (1st Cir. 2005) (*quoting Bull HN Info. Sys. Inc. v. Hutson*, 229 F.3d 321, 330 (1st Cir. 2000). "Indeed it is 'among the narrowest known in the law'"), *Ramos-Santiago v. United Parcel Service*, 524 F.3d 120, 123 (1st Cir. 2008) and nearly "impervious to judicial oversight".  *Ortiz-Espinosa v. BBVA Securities of PR*, No. 16-1122 (1st Cir. Decided January 20, 2017).

---

[5]  Although this Court will not be reviewing the merits, Respondents are compelled to attach as Exhibit 3 to the Dennin Decl. references to the record (ignored by UBS) that demonstrate that Petitioner's rendition of the "facts" in its petition is wholly incomplete, misleading and inaccurate.

**A.** **UBS Has Waived its Right to Complain About Any Arbitrators' Non-Disclosure and Purported Partiality and Denial of a Fundamentally Fair Hearing**

Courts interpreting the Federal Arbitration Act ("FAA") have expressly discouraged losing parties from running post-award background checks on arbitrators as a tactical response to losing. *See JCI Communications Inc. v. International Brotherhood of Elec. Workers*, 324 F.3d 42, 52 (1st Cir. 2003). In said case, JCI chose not to inquire about the background of the arbitrators either before or during the hearing. After losing the arbitration, JCI apparently engaged in a post award investigation of the arbitrators and discovered that three of the arbitrators had an undisclosed affiliation with JCI's competitors. The First Circuit denied JCI's motion to vacate and rejected the claim that this non-disclosure constituted evident partiality requiring vacatur. As stated by the First Circuit: "[W]e cannot accept that the parties have a right to keep two strings in their bow-to seek victory before the tribunal and then, having lost, seek to overturn it for bias never before claimed. JCI has waived the claim." *Id at 52.* UBS, represented by the same counsel here, cited the *JCI* case in opposing vacatur in the AEELA proceeding (pending before this Court). According to UBS, "Courts generally 'will not entertain a claim of personal bias when it could have been raised at the arbitration proceedings but was not'." *Citing JCI* at 51 and *Fort Hill Builders, Inc. v. Nat'l Grange Mut. Ins. Co.*, 866 F.2d 11, 13 (1st Cir. 1989) (per curiam). (*See* Dennin Decl. Ex. 4 pg. 18).

**i.** **UBS's Failure to Meet the Minimum Standard of Diligence**

In direct contradiction to what they assert here, UBS, in AEELA, argued before this Court that courts generally refuse to vacate due to arbitrator non-disclosure of relationships (or other potential "conflicts") where the complaining party "could have learned about the relationship 'just as easily before or during the arbitration rather than after it lost its case.'

*Lucent Techs. Inc. v. Tatung Co.*, 379 F.3d 24, 28 (2$^{d}$ Cir 2004)". (*See* Dennin Decl. Ex. 4 pg. 18).

The authorities cited by UBS in AEELA regarding courts' abhorrence of post award no stone unturned investigations (which are completely ignored in UBS's present Petition) apply four square to the facts in this case. As acknowledged to this Court by UBS:

> This type of 'sore loser' post-award behavior is impermissible, and for obvious reasons. As the Court in *Stone* explained:
>
>> To preserve failure-to-disclose type of challenges to an arbitration award, the parties simply need to exercise as much diligence and tenacity in ferreting out potential conflicts *ex ante* (in selecting the panel) as they do *ex post* (once attacking the award becomes the sole reason to research the arbitrators). Anything less would allow, if not encourage, sore losers to do exactly what [the losing party] did in this case: run a post-award background check on each and every arbitrator, not because he perceived any bias during the arbitration, but simply as a tactical response to losing.

872 F. Supp. 2d at 457." (*See* Dennin Decl. Ex. 4 pg. 19). As stated in *Stone:*

> Moreover, where a party is capable of "thoroughly and systematically digging for dirt on each of the three arbitrators," it should do so prior to being solely motivated by the chance of vacating the award." 872 F.Supp.2d 435, 457 (E.D.Pa. 2012).

By apparently engaging in some post-award sleuthing to discover what it knew or could have known before the award, UBS has waived the right to challenge the award based on apparent non-disclosure. In citing the case of *Goldman Sachs & Co. v. Athena Venture Partners, L.P.*, 803 F.3rd 144, 149-50 (3rd Cir. 2015), UBS acknowledges before this Court that:

> [A] party may not conduct a background investigation on an arbitrator after the award with the sole motivation to seek vacatur. If it were any other way, arbitrations would cease to have finality and result in endless hearings within hearings. (some alterations in original) (internal citations omitted). Thus, even if evident partiality could be demonstrated here, which it cannot, AEELA has waived it as a ground for vacatur because it never inquired or objected before the Final Award despite the opportunity to do so." (*See* Dennin Decl. Ex. 4 pg. 19).

As detailed hereafter, UBS is bound by judicial estoppel from any attempt to do an about face and take an opposite position regarding their obvious waiver to "cry bias" based on a post

award investigation that could have just as easily been conducted pre-award. The three proceedings that UBS claims were non-disclosed or misstated are all publically available and, as applied to Dr. Meek, easily found in minutes by a simple Google search. (*See* Marrero Decl.). That UBS (with virtually unlimited resources) would not make the effort to do so in this case is puzzling particularly when Respondents were seeking approximately $20,000,000.00 in damages and Chairperson Wright sat on a previous case in which the panel unanimously found against UBS and on August 28, 2015, awarded in approximately $3,000,000.00 to investors. (*See* Dennin Decl. Ex. 5). *See Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 683 (7th Cir.1983) ("It is true that the disclosure requirements are intended in part to avoid the costs of background investigations. But this is a $10 million case. If Leatherby had been worried about putting its fate into the hands of someone who might be linked in the distant past to the adversary's principal, it would have done more than it did to find out about [the arbitrator]. That it did so little suggests that its fear of a prejudiced panel is a tactical response to having lost the arbitration.").

As of September 28, 2015, Chairperson Wright had been selected by UBS and served as an arbitrator through decision on at least four UBS PaineWebber arbitrations going back as far as 2002 and was selected by UBS and assigned as an arbitrator in nine pending UBS arbitration claims involving public customers and one arbitration claim involving non-public customers. (*See* Quinones Decl. Ex. H). Even if this Court was to accept UBS's representation that it was not until after the "shocking result" in the instant case that caused UBS to conduct a "comprehensive investigation" into the arbitrators' backgrounds, given the numerous cases that

Chairperson Wright has been vetted and approved by UBS as an arbitrator, UBS certainly had ample opportunity to uncover the innocuous 2001 securities class action claim.[6]

The same holds true for arbitrator Susan Meek. Pursuant to her disclosure form dated November 25, 2014 (i.e. well before the Final Award in this case dated December 5, 2016), Dr. Meek had been vetted and selected to sit as an arbitrator by UBS on no less than six arbitrations going back as far as 2012. (*See* Quinones Decl. Ex. I). UBS had ample opportunity to conduct a search of her background which would have uncovered the publically filed proceedings going back to the early 1990s. (*See* Marrero Decl.). By apparently choosing not to do so, UBS has waived the opportunity to "cry foul" only now that they have been found on the losing end of an award.

**B.** **Even if UBS's Claims are Not Waived They Fall Woefully Short of the FAA Standards to Vacate a Three Panel Unanimous Arbitration Award**

The Supreme Court decision of *Hall Street Associates. L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008) held that Section 10 of the FAA provides exclusive grounds under the statute for vacatur of arbitration awards and that these "exclusive" statutory grounds cannot be supplemented by the parties' contract. *See also, Popular Securities v. Colon,* 59 F. Supp. 3d 316 (D.P.R. 2014) (Hon. Pedro Delgado) (Confirmation of an arbitration award can **only** be denied if an award has been vacated, corrected or modified in accordance with the FAA) (citing *Hall Street*) (emphasis added). The *sole grounds* for UBS's request that this Court vacate the instant award are sections 10(a)(2) and 10(a)(3) of the FAA. (Pet. at ¶¶4, 73).

Title 9 U.S.C. §10(a)(2) and §10(a)(3) provides:

---

[6] Petitioners acknowledge that this post award investigation was motivated solely as a result of losing (rather than any purported arbitrator bias or misconduct) which is exactly the type of sore loser conduct that courts have soundly rejected.

(a)     In any of the following cases in and for the district wherein the award was made may make an order vacating he award upon the application of any party to the arbitration-

[…]

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or any other misbehavior by which the rights of any party have been prejudiced.

As UBS well knows, since it said so to this Court in its memorandum submitted in opposition to vacatur in the AEELA case,

An arbitrator's purported failure to disclose information is not grounds for vacatur under 9 U.S.C. §10.  *See ANR Coal Co. v. Cogentrix of N.C., Inc.,* 173 F.3d 493, 497 (4th Cir. 1999) (Section 10 of the FAA "makes no mention of an arbitrator's failure to disclose information as a statutory basis to vacate an award."  *ALS & Assococs., Inc.v. AGM Marine Constructors, Inc.*, 557 F. Supp. 2d 180, 184 (D. Mass. 2008) (internal quotes omitted).  See Dennin Decl. Ex. 4 UBS Opp.  ppgs. 13-14.

UBS's petition in the instant case is replete with references to FINRA rules and guidelines and purported breaches of these rules and guidelines.  (Pet. at ¶¶27-30; 50, 64, 72).

However, as UBS acknowledged to this Court in AEELA:

Nor does an arbitrator's failure to comply with any arbitration rules or ethical codes, including any duties to disclose under such rules or codes (such as FINRA Rule 12405) provide grounds for vacating an arbitrator award.  *See e.g. Nationwide Mut. Ind. Co. v. First State Ins. Co.,* 213 F. Supp. 2d 10, 17 (D. Mass. 2002) ([I]t is well-settled that only the statutory grounds in §10 (a) of the [Federal Arbitration] Act justify vacating an award; arbitration rules and ethical codes do not have the force of law.") (quoting *Delta Mine Holding Co. v. AFC Coal Props., Inc.,* 280 F.3d 815, 820 (8th Cir. 2001); *Merit Ind. Co, v. Leatherby Ins. Co.*, 714 F.2d 673, 680 (7th Cir. 1983) ("[E]ven if the failure to disclose was a material violation of the ethical standards applicable to arbitration proceedings, it

does not follow that the arbitration award may be nullified judicially."). See Dennin Decl. Ex. 4 UBS Opp. pg. 14.

The Second Circuit recently addressed this issue in the case of *Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584 (2nd Cir. Jan. 28, 2016) ("the attempt to secure vacatur based on private arbitral rules runs headlong into the principle that parties may not expand by contract the FAA's grounds for vacating an award"; "if an arbitrator's failure to comply with arbitral rules, without more, could properly be considered 'corruption' or 'misbehavior', the FAA's grounds for vacatur would be precisely as varied and expansive as the rules private parties might choose to adopt").

According to UBS, "the alleged violations of disclosure rules and requirements under FINRA arbitration rules" are relevant "only if they 'demonstrate partiality or corruption in the arbitrators'" (see Dennin Decl. Ex. 4 pg. 14). The twenty-six year old proceeding involving an attorneys' fee dispute and related twenty-three year old petition for bankruptcy (which was subsequently voluntarily withdrawn) (both ascribed by UBS to Dr. Meek), as well as the sixteen year old class action filing (ascribed by UBS to Ms. Wright) had no relation to any of the parties, issues or facts in the present arbitration and are so attenuated that they are not even remotely anywhere close to meeting the stringent evident partiality or corruption standard in the First Circuit.

Incredibly, UBS, contrary to the above referenced controlling authority and <u>UBS's own submissions to this Court in AEELA</u>, argues that purported violations of FINRA guidelines and rules requires vacatur and requests this Court apply a far lower and legally unsound standard that is not factually supported in the record: "Here Wright failed to disclose facts that *suggest* her partiality in favor of respondents". Pet at ¶69 (emphasis added). As UBS knows, these arguments are without merit.

### C. The Arbitrators Disclosed All Pertinent Information and Any Purported Non-Disclosures or Misstatement Were Immaterial

The purported non-disclosures about which UBS complains do not reach the level of appearance of bias, let alone 'evident partiality' or constitute such grave misbehavior requiring this Court to determine that UBS was deprived of a fundamentally fair hearing. As a threshold matter, UBS does not point to any conduct (nor could they) during the proceedings themselves that would even hint at partiality or unfairness. Indeed, at the conclusion of the hearings (after 50 full sessions), <u>counsel for UBS commenced his closing argument praising the entire three members of the Panel and represented that UBS got "all it could ask for"</u> in the manner in which the Panel presided over the proceedings:

> And before I get into the substance of the case, I do want to take the opportunity to thank the three of you for the time and close attention that you have paid throughout the course of this case…

> We also appreciate the extent of diligence and attention that you have paid throughout the course of this case. I know the presentations have been long, often times tedious in nature, but all of you have paid close attention throughout the course of this case. You've taken extensive notes. You have asked good questions along the way. And at the end of the day I think that all the parties can ask for is that you get a panel that allows the parties to present the case in the manner in which they want to present it and a panel that pays close attention and stays engaged throughout the course of the proceeding. I think you did both of those. So thank you. (Dennin Decl Ex. 24).

At the end of his close, counsel for UBS again thanked the Panel for its diligence displayed throughout the trial acknowledging that the issues in the case are now it the Panel's "very capable hands":

> We ask you for a full denial of the claim. It's your discretion what to do with the forum fees. If you decide that those should be spilt or assigned to a particular party, we leave that in your vary capable hands. Again I want to thank you tremendously for the time, the effort and close attention you have paid throughout the course of the case. Thank you very much. (*See* Dennin Decl. Ex. 24, pg. 5099).

12

Now, after having lost a full and fair hearing, and one in which all the arbitrators did a "great job", UBS has attacked two arbitrators—Frances Johnson Wright, the Chairwoman of the Panel, and Dr. Susan B. Meeks – in what can unfortunately only be viewed as an unprofessional, legally invalid and sanctionable gambit.

**Francis Johnson Wright, J.D.** Ms. Wright is a highly educated (Duke University Undergraduate, University of Florida College of Law, Harvard University mediator training and Oxford University law program) with extensive experience as a FINRA arbitrator and Chairperson (according to her FINRA arbitration disclosure form updated January 10, 2017, she has sat as an arbitrator on 28 cases resulting in publically available awards). (Dennin Decl. Ex. 6). Her award history includes four cases in which the investors received zero. Significantly, Chairwoman Wright sat on two customer cases against UBS (one of those cases UBS was represented by the Bressler firm – the same firm that represented UBS in the Vizcarrondo arbitration hearing) in which the customers were awarded in 2003 and 2011 after trial 17% and 4.3% respectively of the compensatory damages sought. (*See* Dennin Decl. Ex. 7). This history completely undermines UBS's ludicrous assertion that the filing of a 2001 class action complaint demonstrates bias against UBS and partiality towards customers. Ms. Wright has been practicing law for more than 35 years. In addition to her long and distinguished career as a litigator, mediator, and arbitrator, Ms. Wright has published articles regarding the legal profession and has been involved in many civic organizations.

**Susan B. Meek, J.D., M.D.** Dr. Meek received her medical degree at Chicago Medical School, her law and undergraduate degrees at University of Illinois and received a corneal research fellowship at Louisiana State University. She is an accomplished writer and has published numerous articles in both the medical and legal professions including the New

England Journal of Medicine and has published a book on dispute resolution. Dr. Meek has taught mediation, arbitration and dispute resolution at the Houston Law School and has served as a mediator and arbitrator starting in 1988. According to Dr. Meek's FINRA arbitration disclosure form updated January 11, 2017, Dr. Meek has been selected to serve as an arbitrator on six FINRA arbitrations resulting in publically available awards and is presently sitting as an arbitrator in seven pending FINRA arbitration cases involving public customers -- three of which UBS is a party and selected Dr. Meek as an arbitrator. (Dennin Decl. Ex. 8).

**D.  UBS's Post Award Attack on Dr. Meek is Factually Inaccurate and Misleading and Does Not Meet the Stringent FAA Standards For Vacatur**

With regard to Dr. Meek, UBS stridently asserts that she failed to disclose that "she engaged in fraud" which under FINRA guidelines precludes her from "serving as a FINRA arbitrator in _any_ proceeding" (Pet. at ¶¶29, 55) (emphasis added). FINRA disagrees with UBS's post award fraud indictment of Dr. Meek. According to Dr. Meek's January 2017 updated FINRA Disclosure Form, she has not been "deemed per se unqualified" (Pet. at ¶29) nor permanently and "irrevocably disqualified" (Pet. at ¶55), and in fact is presently sitting as a FINRA arbitrator in seven FINRA arbitrations three of which UBS is a party. (Dennin Decl. Ex. 8).

This Court deserves to know what the purportedly "finding of fraud" is about, in order to put UBS's unsound allegations in perspective. Although not disclosed to this Court in its petition, George M. Bishop III, the attorney who sued Dr. Meek, is a convicted felon and was disbarred. (See Meek January 2017 updated FINRA Disclosure form Dennin Decl. Ex. 8 and Order of Disbarment Dennin Decl. Ex. 22). In 1994, a jury verdict found that Arbitrator Meek was liable to Bishop Peterson & Sharp, P.C. ("BP&S") in the amount of $7,181.55 for attorneys' fees for services rendered, $25,716.12 for attorneys' fees in connection with the trial of that case

and $115,000 in additional attorneys' fees if Arbitrator Meek exercised her right to appeal the judgment to the Texas Court of Appeals and the Supreme Court of Texas.[7]  *See* Jury Verdict Questions No. 1 and 2 (Dennin Decl. Ex. 9).

The jury also made a finding that Dr. Meek committed fraud in this matter (<u>See</u> Jury Verdict Question No. 11) and awarded BP&S an additional $50,000 in exemplary damages. (<u>See</u> Jury Verdict Question No. 13).  (Dennin Decl. Ex. 9).

In order to prevail in a cause of action for the tort of common law fraud in Texas, a plaintiff must establish the following elements: (1) the defendant made a material representation; (2) that was false; (3) the defendant knew that the representation was made falsely or recklessly without any knowledge of its truth; (4) the defendant made the representation with the intent that the representation would be acted upon by the plaintiff; (5) the plaintiff acted in reliance upon the false representation; and (6) the plaintiff suffered injury as a result of actively and justifiably relying on that representation.  *See Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 185 (Tex. 1977); *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex. 1990).

Petitioner's representation in ¶ 37 of its Petition that the appellate court "did not disturb any of the jury's factual findings, including its finding that Meek had 'committed fraud in this matter" and that Arbitrator Meek had acknowledged "the jury's . . . findings of fraud" are simply untrue.

---

[7]  George Bishop of BP&S represented Dr. Meek in the case of <u>*Susan B. Meek, M.D., J.D. vs. Cooper, Vorster And Hogsdon, A Partnership A/K/A Eye Contact, Inc.*</u>, Harris County District Court Case No. 91-24358.  On or about June 11, 1992, BP&S withdrew as Dr.  Meek's counsel in the above referenced action, interpleaded as a party in that lawsuit and filed a claim against his client, Arbitrator Meek, for $7,434.08 in attorney's fees and expenses.  (See Motion To Withdraw As Counsel and a Plea In Intervention Dennin Decl. Ex. 10).  It is unclear whether Dr. Meek represented herself in defense of her former attorney's claim for attorney fees after her attorney withdrew and then filed an interpleader complaint against his former client in the very same action that he had previously been representing her.

Arbitrator Meek successfully attacked the jury's finding of fraud and exemplary damages by demonstrating that plaintiff BP&S did not satisfy the above-referenced necessary sixth element for the tort of common law fraud in Texas, i.e., that BP&S suffered a distinct tortious injury separate and apart from the economic loss ($7,181.55) that the jury awarded for attorneys' fees for services rendered.  As stated by the appellate court:

> *In her second point of error, Meek contends that the trial court erred by awarding exemplary damages for fraud because no actual damages were found for fraud.* She acknowledges the jury's respective findings of fraud and actual damages, *but complains that the actual damages question did not state that those damages resulted from the fraud.*  (Italics supplied for portions of this excerpt not referenced in UBS's Petition at ¶ 37.)  *Meek v. Bishop Peterson & Sharp, P.C.*, 919 S.W.2d 805, at 808 (Tex. 1996).

The following excerpts reflect the Texas Court of Appeals, 14th District's legal reasoning in reversing and vacating the trial court's award of exemplary damages:

> In this case, the actual damages awarded were for legal services rendered by Bishop to Meek.  The injury suffered by Bishop arose from the non-payment of those fees pursuant to the contract.  *There was no proof or finding of a distinct tortious injury which resulted in actual damages apart from those suffered for the breach of contract.*  Under these circumstances, the award for exemplary damages was improper and must be reversed.  Moreover, because the complaint was preserved by Meek by a no evidence objection to the submission of the jury question on exemplary damages, the proper disposition is to render judgment vacating the trial court's judgment awarding exemplary damages.  (Italics supplied.)  (Cites omitted.)

The Court's finding that BP&S had failed to prove the necessary final element of the tort of common law fraud left BP&S with a final judgment for breach of contract only and implicitly overturned the jury's finding of common law fraud.

As reflected above, since these claims were legally and factually unsupportable, the jury should have never been charged the purported fraud and exemplary damages claims.  In addition, review of the lower court's jury instruction on fraud, reflects it was improper since it left out the

most critical and most difficult to prove elements of fraud i.e. scienter or state of mind. The trial

court provided the jury with the following definition of fraud:

> You are instructed that the term fraud as used in this charge means a representation of a material fact with the intention to induce action and reliance on the misrepresentation by a person who as a result of such reliance suffers damages. (Exhibit N to Quinones Decl.).

This instruction was improper since it did not include the critical third element of fraud: "(3) the

defendant knew that the representation was made falsely or recklessly without any knowledge of

its truth". *See Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 185 (Tex. 1977); *see also*

*Texas Pattern Jury Instructions* (2006 edition citing case law back to 1984) attached as Exhibit

11 to Dennin Decl. Thus not only was the jury's finding of exemplary damages and fraud

overturned on appeal (i.e. there was *no final adverse court decisions* regarding fraud), the jury's

initial finding of fraud was improper because the jury was not properly charged as to the

elements of fraud.[8]

George M. Bishop III's (the attorney who sued Dr. Meek in 1992) felony convictions

stemmed from his willful evasion of taxes in 1991 and 1994 years (i.e. same time frame he sued

his client, Dr. Meek), circumventing the firm's record keeping process and false representations

to his tax preparers regarding, *inter alia*, a $993,333.33 legal fee. *See United States of America*

*v. George Meredith Bishop*, 264 F.3d 535 (4th Cir. 2001). As reported in the Houston Press,

prior to being disbarred, convicted and sentenced to 18 months in a federal prison, Bishop, who

was married to a local judge throughout the Meek 1991 proceeding, "was a behind the scenes

power in deciding who would get on the bench and stay there" and hosted pheasant hunts and

---

[8] Not surprisingly, when UBS cited the portion of the hearing transcript in the $7,000 legal fee dispute (Pet. at ¶37), UBS starts the quote mid-sentence and misleadingly left out the following language by Judge Reagan Clark: "*I have forgotten how the issue was submitted with regard to fraud*" (emphasis added). (See Dennin Decl. Ex. 12).

election night fajita feasts for locals for "politically active lawyers seeking favor". (Dennin Decl. Ex. 13).

The adverse result in the Bishop attorneys' fees litigation caused Dr. Meek to file a petition seeking bankruptcy in 1994 which she voluntarily withdrew in 1998. (See Meek January 2017 updated FINRA Disclosure form Dennin Decl. Ex. 8).[9] In an eleven page disclosure checklist, Dr. Meek responded "No" to the question have you ever declared personal bankruptcy. This misstatement does not provide a basis for this Court to vacate the award under the FAA. Although not entirely clear, since UBS asserts that both Dr. Meek and Chairwoman Wright were "evidently partial" (Pet. at ¶3), it appears that UBS relies solely on §10(a)(3) as a basis for its challenge to Dr. Meek (Pet. at ¶54). Title 9 U.S.C §10(a)(3) provides:

> (a)     In any of the following cases in and for the district wherein the award was made may make an order vacating he award upon the application of any party to the arbitration-
>
> […]
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or any other misbehavior by which the rights of any party have been prejudiced.

UBS does not and cannot assert that there was any misconduct in refusing to postpone the hearing or refusal to hear evidence. UBS relies on the catchall language regarding "any other misbehavior by which the rights of any party have been prejudiced". There is very little case law addressing what constitutes "other misbehavior" under Section 10(a)(3). *See Stone v. Bear Stearns & Co., Inc.*, 872 F.Supp.2d 435 (E.D. Pa. May 29, 2012) ([I]n practice, failure-to

---

[9] UBS, in its Petition at ¶63 falsely states to this Court that the bankruptcy was "precipitated by a lawsuit brought against Meek by a large financial institution -Texas Commerce Bank". Texas Commerce received a summary judgment for $104,532.92 in November 1993 (see Dennin Decl. Ex. 14). Bishop obtained his final judgement for $187,181.55 on April 15, 1994 and Dr. Meek and her husband filed a petition for bankruptcy May 25, 1994 (see Dennin Decl. Ex. 15 and Quinones Decl. Ex. G). It was the questionable judgement obtained by a felon and subsequently disbarred former local power broker attorney secured in a local Texas court that precipitated the bankruptcy filing, not the Texas Commerce Bank judgment.

disclose that would constitute 'misbehavior' under Section 10(a)(3) would likely also reflect 'evident partiality', which Section 10(a)(2) already addresses. This might explain the dearth of case law in failure-to-disclose-type misbehavior.'"); *See also, STMicroelectronics, N.V. v. Credit Suisse Securities (USA) LLC*, 648 F.3d 68 (2nd Cir. 2011) (Credit Suisse does not cite any cases, nor are we are of any, that have addressed claims of insufficient disclosure under the 'other misbehavior' prong.").

FINRA Rule 12405 is the FINRA Rule that provides guidance to arbitrators regarding the type of disclosures that should be made to the Director of FINRA arbitration. It provides:

(a)     Before appointing arbitrators to a panel, the Director will notify the arbitrators of the nature of the dispute and the identity of the parties. Each potential arbitrator must make a reasonable effort to learn of, and must disclose to the Director, any circumstance which might preclude the arbitrator from rendering an objective and impartial determination in the proceeding, including:

(1)     Any direct or indirect financial or personal interest in the outcome of the arbitration;

(2)     Any existing or past financial, business, professional, family, social, or other relationships or circumstances with any party, any party's representative, or anyone who the arbitrator is told may be a witness in the proceeding, that are likely to affect impartiality or might reasonably create an appearance of partiality or bias;

(3)     Any such relationship or circumstances involving members of the arbitrator's family or the arbitrator's current employers, partners or business associates; and

(4)     Any existing or past service as a mediator for any of the parties in the case for which the arbitrator has been selected.

(b)     The obligation to disclose interests, relationships, or circumstances that might preclude an arbitrator from rendering an objective and impartial determination described in paragraph (a) is a continuing duty that requires an arbitrator who accepts appointment to an arbitration proceeding to disclose, at any stage of the proceeding, any such interests, relationships, or circumstances that arise, or are recalled or discovered.

(c)     The Director will inform the parties to the arbitration of any information disclosed to the Director under this rule unless the arbitrator who disclosed the information declines appointment or voluntarily withdraws from the panel as soon as the arbitrator learns of any interest, relationship or circumstance that might preclude the arbitrator from rendering an objective and impartial determination in the proceeding, or the Director removes the arbitrator.

As UBS acknowledged to this Court in AEELA, an arbitrator's violation of FINRA Rules or guidelines "including any duties to disclose under such rules or codes (such as FINRA Rule 12405) [does not] provide grounds for vacating an arbitrator award". (emphasis added). (See Dennin Decl. Ex. 4 pg. 14). Even if the FINRA Rules did apply (which they do not), Dr. Meek's non-disclosure of the 1994 overturned jury verdict of fraud and exemplary damages and resultant bankruptcy filing (voluntarily withdrawn) does not violate FINRA Rule 12405 (let alone meet the stringent standards of Section 10 of the FAA). These 23 year old plus proceedings are in no way related to the arbitration, the parties, or their counsel. Nor do these decades old proceedings reflect any direct or indirect personal or financial interest in the outcome of the arbitration. No reasonable person could objectively conclude that the non-disclosure of these two 23 year old proceedings constitute circumstances which might preclude Dr. Meek from rendering an objective and impartial determination in the UBS arbitration. *See Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 151 (1968) (nothing requires an arbitrator to furnish the parties with a "complete and unexpurgated business biography"); *Thomas James Associates, Inc. v. Owens*, 1 S.W.3d. 315 (Tex. App. 1999) (no requirement to disclose all prior arbitrations in NASD's Code; disclosure form sent to arbitrators for completion failed to create such a duty).

The First Circuit has held that an arbitration award cannot be vacated under Section 10(a)(3) unless the party can show misconduct so severe that it denied the aggrieved party a fundamentally fair hearing. *See Doral v. García-Vélez,* 725 F 3d. 27 (1st Cir. 2013) (Motion to

Vacate denied on the papers where the record was "devoid of evidence showing the Doral was not afforded a 'fair hearing'"). *See also Apex Fountain Sales, Inc. v. Kleinfeld,* 818 F.2d 1089, 1094-95 (3rd Cir. 1987) ("[u]nder Federal law, misconduct apart from corruption, fraud or partiality in the arbitrators justifies reversal only if it so prejudices the rights of the party that it denies the party a fundamentally fair hearing.").

UBS has not and cannot cite to anything in the record that would support a finding of arbitrator misconduct that so prejudiced UBS that it was denied a fundamentally fair hearing. Instead, UBS improperly argues that FINRA Rules required the disclosure of these extremely remote, unrelated and attenuated proceedings and then speculatively concludes (after losing) that UBS would have struck these arbitrators and thus UBS has been prejudiced and denied a fundamentally fair hearing.[10] This tenuous connect the dot argument has been previously run up the flag pole and rejected. *See Antietam Industries, Inc. v. Morgan Keegan & Co. Inc.*, 2013 WL 1213059 (M.D. Fla. 2013) (Morgan Keegan ("MK") sought vacatur under §10(a)(2) ("evident partiality") and §10(a)(3) ("misbehavior") arguing that an arbitrator's non-disclosure of a prior award and misstatement that there were no prior awards prejudiced MK by depriving MK the right to remove that arbitrator from the panel (see Dennin Decl. Ex. 16 pg. 9). The court denied the motion finding that MK failed to meet its heavy burden establishing misbehavior or evident partiality). (Dennin Decl. Ex. 17). *See also Delta Mine Holding Company v. AFC Coal Properties, Inc.*, 280 F.3d 815, 822 (8th Cir. 2001). ("A party seeking vacation of an award on either of these grounds [§10(a)(3) and§10(a)(4)] must demonstrate that the conduct influenced the outcome of the arbitration). UBS, like MK in *Antietam,* cannot point to any misbehavior let

---

[10] An objective reading of FINRA Rule 12405 reflects that this rule does not require the disclosure of these extremely dated proceedings that are wholly unrelated to the parties, counsel, issues and facts in the Vizcarrondo arbitration.

alone severe misbehavior by any of the arbitrators that influenced the outcome of the arbitration as required under §10(a)(3).

It is pure speculation to say what UBS would have done had these 23 year old proceedings had been disclosed. UBS's generalized allegation of prejudice and denial of a fundamentally fair hearing based upon an alleged loss of opportunity to request removal or recusal of the Arbitrators does not meet the standards required under the FAA. *See Antietam Id.; Scott v. Prudential Securities, Inc.,* 141 F.3d 1007, 1016 (11th Cir. 1998) (affirming district court's denial of motion to vacate an arbitration award because the appellant's allegations amounted "to precisely the vague, remote, and speculative charges that we have held cannot support an order to vacate an arbitration award) ), (cited by 1st Circuit as overruled on other grounds in the unpublished opinion of *CM South v. Careminders,* 2016 WL 5859695).

### E. UBS's Post Award Attack on Chairman Wright Likewise has no Merit

In its Motion to Vacate, UBS cites to a 2001 securities class action entitled *Kathleen Guerra v. Teradyne, Inc., George Chamillard and Michael A. Bradley,* Civil Action No. 01-11789 (D. Mass. 2001) and argues that non-disclosure of this wholly unrelated sixteen year old proceeding requires vacatur not only under 10(a)(3) but 10(a)(2) of the FAA.[11] The *Teradyne* case was a broad based class action alleging violations of Sections 10(b) and 20(a) of the

---

[11] As is typical in the early stages of security class actions, plaintiffs' counsel were jockeying for a position as lead counsel. In that process, one of the attorneys assembled a group of plaintiffs which included Chairwoman Wright. The court did not appoint this group or counsel representing the group as lead. (*See Dennin Decl. Ex. 18*). Chairwoman Wright never appeared in the caption of this case and was an unnamed participant in this case which was dismissed before class certification. (*See Dennin Decl. Ex. 19*). The "party status" of the absent class member depends on the procedural stage when it is asserted (that is, before or after certification). As to the status of the absent class member prior to certification, it seems to be settled that "a non-named class member is [not] a party to the class-action litigation *before the class is certified*". (Emphasize in the original). *Standard Fire Ins. Co vs. Knowles,* 133 S.Ct. 1345 (2013, J. Breyer). As stated by the Supreme Court in *Philips Petroleum Co. v. Shutts,* 472 U.S. 797 (1985), "absent plaintiff class members are not subject to other burdens imposed upon defendants. They need not hire counsel or appear. They are almost never subject to counterclaims or cross-claims, or liability for fees or costs. Absent plaintiff class members are not subject to coercive or punitive remedies. Nor will an adverse judgment typically bind an absent plaintiff for any damages, although a valid adverse judgment may extinguish any of the plaintiff's claims which were litigated'.

Securities Exchange Act of 1934 (the "Act"), 15 U.S.C. §§78j(b) and 78(t)(a), and Rule 10b-5 promulgated by the Securities and Exchange Commission ("SEC"), 17 C.F.R. §240.10b-5 (See Dennin Decl. Ex. 20 ¶14). This federal securities claim alleged fraud on the market and claimed that Teradyne, a manufacturer of semiconductor test systems and two of its officers made alleged misstatements to the "investing public" that artificially inflated the value of publically traded stock to purportedly enable Teradyne to acquire two other corporations. This sixteen year old proceeding did not involve any broker-dealer or FINRA member. The claims, parties, causes of action, time frame, facts, legal theories and counsel were completely different and unrelated to the unique and fact specific claims tried in the Vizcarrondo arbitration.[12] Simply put, this sixteen year old unrelated class claim does not even fit into the types of disclosures referenced in FINRA Rule 12405 (perhaps that accounts for UBS choosing not to incorporate the complete language of this Rule in its petition and supporting paperwork). The non-disclosure of this wholly unrelated sixteen year old class action does not constitute misconduct so severe that it denied UBS a fundamentally fair hearing – the standard required for vacatur under Section 10(a)(3). *See Doral v. García-Vélez,* 725 F.3d. 27 (1st Cir. 2013).

UBS separately argues that the nondisclosure of this sixteen year old proceeding demonstrates "evident partiality" requiring vacatur under §10(a)(2). Again, UBS's own words in the AEELA case sink the petition that they are trying to float by this Court:

> Evident partiality is demonstrated *only* when 'a reasonable person *would have to conclude* that an arbitrator was partial to one party to an arbitration.' (emphasis added) *(citing 1st Circuit authority and other authority omitted).* [T]he 'evident partiality' exception is to be strictly construed, as it must be if the federal policy of favoring arbitration is to be given full effect.' (citations omitted).

---

[12] As reflected in the Final Award (Ex. A to Petition), the claims in the Vizcarrondo arbitration were common law claims centering on UBS proprietary CEFs concentrated in PR bonds and whether UBS recommendation to buy and hold such concentrated securities was suitable for Respondents' specific investment objectives and risk tolerance.

The evident partiality expressed by Section 10 of the FAA requires a more stringent showing than the appearance of bias standard, which is generally applied to judges:

The word 'evident' suggests that the statute requires more than a vague appearance of bias. Rather, the arbitrator's bias must be sufficiently obvious that a reasonable person would easily recognize it. By contrast a judicial standard requires recusal if a judge's 'impartiality might be reasonably questioned.' 28 U.S.C. §455(a). this language suggests that the judicial inquiry focuses on appearances—'not on whether the judge actually harbored subjective bias.

*Freeman v. Pittsburgh Glass Works, L.L.C.*, 709 F.3d 240, 253 (3rd Cir. 2013) (internal citations omitted); *see Florasynth, Inc. v. Pickholtz*, 750 F.2d 171,173 (2nd Cir. 1984) ('The mere appearance of bias that might disqualify a judge would not disqualify an arbitrator.').

AEELA has the burden of establishing evident partiality, *JCI Communications, 324 F.3d at 51*, and it must show that the alleged partiality is or was 'direct, definite, and capable of demonstration rather than remote, uncertain or speculative.' *United Steel Workers of Am. Local 12003 v. Keyspan Energy Delivery*, No. CIV.A. 08-11928-GAO, 2009 WL 2422865, at *2 (D.Mass. August 3, 2009) (*quoting Kiewit/Atkinson/Kenny v. Int'l Bhd of Elec, Workers, Local 103*, 76 F.Supp.2d 77,79 (D.Mass. 1999). AEELA must also demonstrate partiality through 'evidence of an arbitrator's motive.' *Lumber Liquidators, Inc. v. Sullivan*, CIV.A. 10-11890-NMG. 2001 WL 5884252, at *4 (D.Mass. Sept. 27, 2011). See Dennin Decl. Exhibit 4 UBS Opp. ppgs. 14-15.

The case of *Rosen Capital Partners LP v. Merrill Lynch Professional Clearing Corp.*, 2013 WL 428460 (Ca. App., 2 Dist. Feb. 5, 2013) is illustrative. In *Rosen*, the Court, in an unpublished opinion, determined that an arbitrator does not have to disclose that she participated in a class action against an entity that was affiliated with an affiliate of a party in the arbitration. The Court also held that the arbitrator does not have to disclose that her ex-spouse worked for an affiliate of a party to the arbitration *fourteen years before the arbitration;* that an arbitrator's experience does not demonstrate partiality and fact that arbitrator lost money in an investment unrelated to the investment at issue in the arbitration does not demonstrate partiality.

It defies logic, common sense and human experience for UBS to assert that by not disclosing a 2001 class action filing in which Chairperson Wright was an unnamed participant that involved completely different parties, facts, causes of actions, legal theories and counsel, establishes that Chairwoman Wright was biased against UBS in the 2016 arbitration hearings. As stated in *Cindy-Marie Rodgers v. Asudal Financial* Partners, 168 F. Supp.3d. 378, 389 (D. Mass. 2016), "[E]vident partiality means a situation in which a reasonable person would have to conclude that an arbitrator was partial to one party to an arbitration (citations omitted). [A] party seeking to vacate on this ground has a 'high burden of demonstrating objective facts inconsistent with impartiality.'" (other citations omitted). UBS has failed to meet this extremely high standard.

Further, UBS must also demonstrate partiality through 'evidence of an arbitrator's motive.' *Lumber Liquidators, Inc. v. Sullivan*, CIV.A. 10-11890-NMG. 2001 WL 5884252, at *4 (D. Mass. Sept. 27, 2011). UBS has not and cannot point to any objective facts in the evidentiary record reflecting bias against UBS nor motive supporting vacatur under FAA §10(a)(2) regarding the non-disclosure of this 2001 proceeding. *See Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 476 F.3d 278 (5th Cir. 2007) ("Neither the FAA nor the Supreme Court, nor predominant case law, nor sound policy countenances vacatur of FAA arbitral awards for nondisclosure by an arbitrator unless it creates a concrete, not speculative impression of bias...The draconian remedy of vacatur is only warranted upon nondisclosure that involves a significant compromising relationship.").

UBS has failed to meet the stringent standards under §10(a)(2) or §10(a)(3). This Court should deny UBS's motion in its entirety and grant Respondents' request to confirm the unanimous award rendered by the three arbitrator panel.[13]

## F. Petitioners' Authorities are Distinguishable

All of the authorities as cited by UBS are distinguishable from the facts and issues in the Vizcarrondo arbitration.[14]

*Goldman Sachs & Co. v. Athena*, 13 – MC 130 (E.D. Pa. Aug. 1, 2013); rev'd 803 F.3d 144 (3rd Cir.2015) – the arbitration hearings were held November 2011 and October 2012. Unlike the Vizcarrondo arbitration, the Arbitrator failed to disclose relevant, substantive and contemporaneous issues regarding: a felony charge of issuing a bad check in April 2012; additional charges in July 2012 of fraud, deceit, misrepresentation "or violation of the criminal law" as a result of the unlawful practice of law in the State of New Jersey; and on October 2012 the arbitrator entered a plea of no contest to the criminal allegations contained in the April and July complaints above. In addition, the arbitrator failed to disclose numerous complaints lodged against him regarding the unauthorized practice of law in 1999, 2002, 2004 and 2006. The District Court granted vacatur finding that the disclosures were "so grossly misleading and incomplete" as to constitute misbehavior warranting vacatur. The Third Circuit reversed and confirmed the award determining that "[t]his is the paradigmatic case of the "sore loser" so to speak, trying for a second bite at the apple-and the exact type of case the law disfavors."

---

[13] Even if UBS could meet the extremely stringent FAA standards to demonstrate that one of the three arbitrators were biased or guilty of grave misconduct (UBS cannot), the award still stands. As acknowledged by UBS in *AEELA* "when (as here) a panel renders a unanimous award, one of the arbitrator's bias is not grounds for vacatur absent a showing that it affected the entire panel's decision-making or the outcome or conduct of the arbitration". (See Dennin Decl. Ex. 21).

[14] None of these authorities are from the First Circuit.

*Municipal Workers Comp. Fund v. Morgan Keegan*, 190 So. 3d. 895 (Ala. Apr. 3, 2015) – involved non-disclosed direct, material, and current relationships and financial dealings between arbitrator and respondent. There are no current or past relationships of financial dealings between any of the arbitrators and the parties and no present or past litigations where an arbitrator was a party involving the same allegations.

*Western Employers Ins. v. Jeffries Co*, 958 F2d 258 (9th Cir. 1992) – in this case the Ninth Circuit interpreted FAA §10(d) (now§10(a)(4)) – whether the arbitrators exceeded their powers – this section is not applicable in the instant case in which the petition is brought solely under §10(a)(2) and (3).

*Move, Inc. v. Citigroup*, 840 F.3d 1152 (9th Cir. 2016) - $131 million dollar auction rate securities case. According to the Ninth Circuit, "[b]ecause this dispute involved a complex securities issue, it was important to Move that the person selected as chairperson be an experienced attorney". Move selected Mr. Frank as its number one choice as chairperson since according to his disclosure report he received his law degree from Southwestern University in 1975 and was licensed to practice in California, New York and Florida. Mr. Frank served as the Chairperson who presided over the FINRA arbitration. After hearing, the panel dismissed the claim. Four years later Move read that Mr. Frank had lied about being a practicing attorney, had been impersonating a retired California attorney with a similar name and that due to his intentional lies and deceit, FINRA removed Frank from all panels he had been sitting on and from its arbitration roster. The court determined based upon the specific facts of that case (i.e., *inter alia,* Move made it clear throughout the selection process it was critical for an attorney to chair the proceedings) and the "purposeful and material deception" of Frank, Move did not receive a fundamentally fair hearing and vacatur was warranted under §10(a)(3). This case has

not been cited by any other court. There is no similar "purposeful and material deception" by any of the arbitrators and the 26 year old proceeding ascribed by UBS to Dr. Meek, and the 16 year old proceeding ascribed by UBS to Ms. Wright are extremely attenuated, with no connection to the parties, issues or counsel. The record is devoid of any hint that UBS was deprived of a fundamentally fair hearing – in fact UBS counsel acknowledges just the opposite on the record. (*See* Dennin Decl. Ex. 24 trial transcript pgs. 4935-4936; 5099).

*Citigroup Global Markets, Inc. v. Berghorst*, 2012 WL 5989628 (S.D. Fl. Jan. 20, 2012). As an initial matter, *Berghorst* is an unpublished opinion not binding on this Court, nor should this Court give much weight to *Berghorst* as it incorrectly relies upon an appearance of bias standard. *See Lifecare Intern*, 68 F.3d 429, 435 (11th Cir. 1995). The <u>Berghorst</u> court held that Citigroup presented a compelling case of evident partiality, because the facts showed that arbitrator Sidell willfully failed to disclose his **current** securities-related litigation against Wells Fargo a FINRA member firm, which created an impression that Sidell likely was partial to the investors. The extremely attenuated 2001 class action, which Chairperson Wright was an unnamed member of a purported class, did not involve a FINRA member and involved completely different facts and causes of action than the Vizcarrondo case. This 16 year old proceeding could not create an impression (let alone must cause a reasonable person to have to conclude) that Chairwoman Wright was partial to Respondents.

*Stivers v. Pierce*, 71. F.3d. 732 (9th Cir. 2014) rises out of an administrative law case and not from an arbitration case. Administrative decisions are not meant to be final and binding. To the contrary, arbitration awards are intended to be final, binding and are nearly "impervious to judicial oversight". According to the court, "*Pierce's [a member of the Board deciding the claim i.e. similar to an arbitrator's role] personal and pecuniary interest in the outcome of the*

*proceedings, standing alone*, would probably be insufficient to support a claim that the appearance of partiality violated due process. *Nor would the Board's repeated unfavorable rulings, standing alone, be sufficient to support a claim that Pierce or any other member of the Board was actually biased against him.*" Thus, for the court, it was the evidence considered altogether (pecuniary interest plus discriminatory treatment by the Board) that created a genuine issue of fact as to whether the administrative licensing proceedings were tainted by actual bias. Stivers introduced enough evidence to establish *prima facie* that Pierce: (1) was Stivers' direct competitor, thus having a pecuniary interest in denying the licenses requested; (2) had an angry past-relationship with plaintiff Chamar's previous owners and threatened to throw them out of business; (3) made derogatory comments against Stivers; (4) harassed plaintiffs by constantly questioning their integrity; (5) delayed the proceedings; and (6) went out of the ordinary course of business, by disregarding the recommendation of the Board's own legal counsel, who advice that the licenses should be granted. The Ninth Circuit held that "[i]n attempting to make out a claim of unconstitutional bias, *a plaintiff must overcome a presumption of honesty and integrity on the part of decision-makers*." He must show that the adjudicator has prejudged, or reasonably appears to have prejudged, an issue." In the instant case there is no evidence of Chairwoman Wright's and/or Dr. Meek's *actual bias* or *appearance of partiality* that, pursuant to <u>Stivers</u>, is necessary in order to overcome the "*presumption of honesty and integrity on the part of decision-makers*".

### G.     UBS Should Be Judicially Estopped From Taking Inconsistent Positions

As reflected herein, UBS has argued before this Court in the AEELA case, positions that are diametrically opposed the arguments asserted here. The same law firms represent UBS in AEELA as in the present case. In AEELA, UBS and its counsel acknowledged that:

.   Courts generally refuse to vacate due to failure to arbitrator failure to disclose when the losing party could have learned about the non-disclosed facts just as easily before or during the arbitration rather after it had lost its case.  (See Dennin Decl. Ex. 4 pg. 18).

.   a party may not conduct a background investigation on an arbitrator with the sole motivation to seek vacatur.  (See Dennin Decl. Ex. 4 pg. 19).

.   an arbitrator's purported failure to disclose information is not grounds for vacatur under 9 U.S.C. §10.  (See Dennin Decl. Ex. 4 pgs. 13-14).

.   an arbitrator's failure to comply with any arbitration rules or ethical codes including any duties to disclose under such rules or codes (such as FINRA Rule 12405) does not provide grounds for vacating an arbitrator award.  (See Dennin Decl. Ex. 4 pg. 14).

.   'evident partiality' under Section 10 of the FAA is only established when the party challenging the award demonstrates that a reasonable person would have to conclude that an arbitrator was partial to one party to an arbitration.  (See Dennin Decl. Ex. 4 pgs. 14-15).

UBS should be estopped from taking the opposite position in this case.  Judicial estoppel is equitable in nature and operates to prevent a litigant from taking a position that is inconsistent with a litigation successfully asserted by him in an earlier phase of the same case or in an earlier court proceeding.  *See InterGen N.V. v. Grina*, 344 F.3d 134, 144 (1st Cir. 2003).  The purpose of the doctrine is to protect the integrity of the judicial process and typically invoked when a litigant tries to play fast and loose with the courts. *New Hampshire v. Maine*, 532 U.S. 742, 749-50, (U.S. Supreme Ct. 2001).[15]

**H.    Respondents Should be Awarded Interest and Sanctions in the Form of Attorneys' Fees and Costs**

---

[15] As of the submission of this Memorandum, this Court has yet to rule on the motion to vacate pending in *AEELA* which has been held in abeyance pending the jurisdictional issue which has just been decided on January 20, 2017 by the First Circuit.

In seeking vacatur, UBS has crossed the line from zealous advocacy and sanctionable conduct. As held in the case of *B.L. Harbert International L.L.C. v. Hercules Steel* Co., 441 F.3d 905 (11th Cir. 2006)[16]:

> Courts cannot prevent parties from trying to convert arbitration losses into court victories, but it may be that we can and should insist that if a party on the short end of an arbitration award attacks that award in court without any real legal basis for doing so, that party should pay sanctions.

*Hercules Steel*, 441 F.3d at 913-914. *See also Fornell v. Morgan Keegan*, Case No. 6:12-CV-0038-JA-GJK (M.D. Fla) (Order entered August 3, 2012, confirming arbitration award and granting sanctions (in the form of attorneys' fees) against Morgan Keegan for filing a frivolous motion to vacate premised upon alleged arbitrator failure to disclose conflict of interest and bias). (*See* Dennin Decl. Ex. 23). Petitioners' factually misleading and inaccurate claims, which are legally meritless, also warrant sanctions under Rule 11.

In considering the imposition of Court sanctions, Respondents submit that the Court should take in consideration the following:

How can UBS allege, with a minimum degree of intellectual honesty, what they are alleging here in their Motion to Vacate, when before this same Court they are claiming just exactly the opposite in the AEELA vs. UBS case? In the AEELA case they have in fact adopted, or rather anticipated, our arguments here.

Respondents request that this Court confirm the arbitration award, award sanctions in the form of attorneys' fees and order interest at the Puerto Rico rate of 4.5% from the issuance of the award until payment in full. *Fort Hill Builders v. National Grange Mutual*, 866 F.2d 11 (1st Cir. 1989) (party entitled to interest from date of arbitration decision).

---

[16] *Hercules* was abrogated on other grounds by *Frazier v. Citifinancial*, 604 F3d 1313 (11 Cir. 2010) but cited by the First Circuit in *CM South v Careminders*, 2016 WL 5859695 as authority for when a party's conduct in pursuing vacatur warrants sanctions.

## <u>CONCLUSION</u>

Respondents respectful request that this Court deny the Petition to Vacate in its entirety, Confirm the Arbitration Award along with attorneys' fees generated as a result of opposing this ill-conceived motion and award interest from the date of the award until payment in full.

**Respectfully submitted this 31st day of January, 2017.**


<u>s/Timothy J. Dennin</u>                          <u>s/Jose A. Andreu-Garcia</u>
(TJD-5117)                                         USDC-PR 110304
Timothy J. Dennin, Esq. (TJD5117)                  José A. Andréu García, Esq.
**TIMOTHY J. DENNIN, P.C.**                        **ANDREU & SAGARDIA**
316 Main Street                                    261 Ave. Domenech
Northport, New York 11768                          San Juan PR 00918
Telephone (631) 261-0250                           Telephone (787) 754-1777
Facsimile (631) 261-0395                           Facsimile (787) 763-8045

Attorney for Claimants                             Attorneys for Claimants
*Admitted Pro Hac Vice*                            Local Counsel