IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UBS FINANCIAL SERVICES INC. and UBS FINANCIAL SERVICES INCORPORATED OF PUERTO RICO,

    *Petitioners*,

v.

RAFAEL VIZCARRONDO and MERCEDES IMBERT DE JESÚS,

    *Respondents*.

Civil No. 16-03220 (PAD)

# PETITIONERS' REPLY IN FURTHER SUPPORT OF THEIR PETITION TO VACATE ARBITRATION AWARD

Roberto C. Quiñones Rivera
(USDC-PR No. 211512)
MCCONNELL VALDÉS LLC
270 Muñoz Rivera Ave.
Hato Rey, PR 00981
Tel: (787) 250-2631
Fax: (787) 759-8282

Peter J. Macdonald (*admitted pro hac vice*)
Ross E. Firsenbaum (*admitted pro hac vice*)
Adriel I. Cepeda Derieux (*admitted pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel: (212) 230-8800
Fax: (212) 230-8888

# **TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................................1

ARGUMENT........................................................................................................................1

    I.      UBS Has Not Waived Its Objections........................................................................1

    II.     The Vacatur Standard Is Met Here, Unlike In *AEELA* ............................................5

    III.    Respondents Fail To Rehabilitate The Arbitrators Or Distinguish
           The Case Law ............................................................................................................7

CONCLUSION...................................................................................................................11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bacardi International Ltd. v. V. Suarez & Co.*,
  719 F.3d 1 (1st Cir. 2013) ................................................................................................. 3, 4

*Field v. Mans*,
  516 U.S. 59 (1995) .................................................................................................................. 2

*Goldman, Sachs & Co. v. Athena Venture Partners, L.P.*,
  No. 13-MC-130, 2013 WL 3955136 (E.D. Pa. Aug. 1, 2013), *rev'd on other
  grounds*, 803 F.3d 144 (3d Cir. 2015) .................................................................................... 9

*JCI Communications, Inc. v. International Brotherhood of Electrical Workers, Local 103*,
  324 F.3d 42 (1st Cir. 2003) ................................................................................................. 3, 4

*Meek v. Bishop Peterson & Sharp, P.C.*,
  919 S.W.2d 805 (Tex. Ct. App. 1996) ..................................................................................... 7

*Move, Inc. v. Citigroup Global Markets, Inc.*,
  840 F.3d 1152 (9th Cir. 2016) .................................................................................. 7, 8, 9, 10

*Municipal Workers Compensation Fund, Inc. v. Morgan Keegan & Co.*,
  190 So. 3d 895 (Ala. 2015) ................................................................................................. 8, 9

*Rent-A-Center, West, Inc. v. Jackson*,
  561 U.S. 63 (2010) .................................................................................................................. 3

*Sanford Institute for Savings v. Gallo*,
  156 F.3d 71 (1st Cir. 1998) ..................................................................................................... 2

*Zurich American Insurance Co. v. Team Tankers A.S.*,
  811 F.3d 584 (2d Cir. 2016) .................................................................................................... 6

**Docketed Cases**

*Asociación de Empleados del Estado Libre Asociado de P.R. v. UBS Financial
  Services, Inc.*, Civ. No. 16-02237 (PAD) (D.P.R.) ......................................................... 4, 5, 6

*UBS Financial Services Inc. v. AEELA*, Civ. No. 16-02017 (GAG) (D.P.R.) ............................... 5

**Statutes**

9 U.S.C. § 10 ................................................................................................................................... 6

9 U.S.C. § 10(a)(2) .......................................................................................................................... 1

9 U.S.C. § 10(a)(3) .......................................................................................................................... 1

**Other Authorities**

Restatement (Second) of Torts § 540 (1977) .................................................................................. 2

In accordance with the Court's Order dated February 3, 2017 (Dkt. No. 30), UBS[1] respectfully submits this memorandum of law in response to Respondents' Memorandum of Law in Opposition to the Petition (the "Opposition") (Dkt. No. 24), and in further support of its Petition to Vacate Arbitration Award (the "Petition") (Dkt. No. 1).

## INTRODUCTION

Respondents do not challenge the central facts of this matter—that two arbitrators made material and fundamental false statements and omissions in their FINRA oaths. Respondents' contention that the egregious arbitral misconduct here—which is on all fours with other cases vacating awards—does not require vacatur is wrong: While vacatur is merited only in "rare circumstances," that does not, and cannot, mean "never," and those rare circumstances are presented in this case.

Respondents direct their fire largely at the wrong target, focusing on the arbitrators' evident partiality (a basis for vacatur under 9 U.S.C. § 10(a)(2)), while essentially ignoring egregious arbitral misconduct prejudicial to UBS (a separate basis for vacatur under § 10(a)(3)). Although both subsections provide independent grounds for vacatur, the arbitrators' blatant misstatements and purposeful omissions to questions in their Oaths of Arbitrator are the primary grounds requiring vacatur in this case.

## ARGUMENT

### I. UBS Has Not Waived Its Objections

Respondents' incorrect contention that UBS waived its right to seek vacatur based on the arbitrators' misrepresentations and material omissions makes no sense, and does not reflect the

---

[1] Capitalized terms used herein have the same meaning as in UBS's Petition to Vacate Arbitration Award. (Dkt. No. 1).

law.  A party has no duty to investigate facts where it has been misled into thinking there is nothing to investigate.  Rather, "a person is justified in relying on a representation of fact 'although he might have ascertained the falsity of the representation had he made an investigation.'"  *Field v. Mans*, 516 U.S. 59, 70 (1995) (quoting Restatement (Second) of Torts § 540 (1977)); *see also Sanford Inst. for Sav. v. Gallo*, 156 F.3d 71, 74 (1st Cir. 1998).  This was the case here.  For example, absent misrepresentations made in arbitrator disclosures, UBS would have known of the fraud finding against Meek.  Had she simply answered honestly that her "alleged misconduct [had] been an issue in any litigation" (as her Oath expressly required), UBS would have had a basis to inquire further.  *See* Meek Oath at 9.  Had she disclosed her personal bankruptcy (as, again, her Oath expressly required), UBS would have had reason to look further and discover a finding that she had committed fraud.  *See id.*  Indeed, the fact of a "[f]inal adverse court decision[] where there [had] been a finding of fraud" against Meek was so obviously relevant to her ability to serve as a qualified FINRA arbitrator that it should have been disclosed under the "Other Disclosures" section as well.  *See Disqualification Criteria*; Meek Oath at 10-11.  Similarly, had Wright disclosed the *Teradyne* Action, UBS would have had reason to understand her role in that case as a putative lead plaintiff and the import of such role in this case.  *See* Wright Oath at 11.  But when asked in her oath to disclose all "dispute[s] involving the same or similar subject matter as the arbitration" that she (or certain close relatives) had been involved in, she disclosed a different, unrelated action, and gave UBS no reason to think that she omitted the *Teradyne* Action from her answer.  *See id.* at 5.  Meek's and Wright's misrepresentations preempted each avenue of further inquiry, concealing material information and bolstering UBS's reasonable reliance on their falsehoods.

The parties here agreed to resolve any disputes under FINRA's rules and procedures. UBS was under no duty to assume that, from the outset, arbitrators would flout those rules, make patently false statements, and thereby mask their lack of qualification to serve. FINRA designed the rules, and the parties agreed to them, based on disclosure and efficiency. It would undermine that very purpose to then contend that, in each case, a party must assume the worst of each arbitrator candidate, presume that the Arbitrator's Oath is false, and conduct an exhaustive and expensive background investigation to get the very information that the rules mandate be disclosed. *See* FINRA *Arbitrator Disclosure* at 1 ("Arbitrator disclosure is the cornerstone of FINRA arbitration, and the arbitrator's duty to disclose is continuous and imperative.")); *see also Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) ("The FAA reflects the fundamental principle that arbitration is a matter of contract . . . and requires courts to enforce [arbitration agreements] according to their terms."); *Bacardi Int'l Ltd. v. V. Suarez & Co.*, 719 F.3d 1, 9 (1st Cir. 2013) ("[A]rbitration serves as an efficient and cost-effective alternative to litigation.") (internal quotation marks and citation omitted). Under those rules, FINRA arbitration is conducted by a panel of three *qualified* FINRA arbitrators, selected by the parties based on their mandatory disclosures. *See* Pet. ¶ 49. UBS—and *all* FINRA arbitration participants—are entitled to rely on arbitrators' mandatory representations establishing that they are not disqualified. Respondents' theory of a waiver in this case cannot be reconciled with the core purposes of arbitration or of the federal policy in favor of it.

*JCI Communications, Inc. v. International Brotherhood of Electrical Workers, Local 103*, 324 F.3d 42 (1st Cir. 2003) (*see* Opp. at 6), is not to the contrary. *JCI* holds that a party cannot contract for a method of dispute resolution *ex ante*, and then challenge that method *ex post*. There, a non-FINRA arbitration panel including JCI's business competitors granted an award

against JCI in its dispute with an electrical-workers' union. 324 F.3d at 47. JCI argued that its industry competitors were biased and that it did not know their company affiliations until after the hearing. The First Circuit found this claim waived because JCI "was put on notice of the risk when it signed the contract." *Id.* at 52. That is, JCI bargained *ex ante* for an arbitration panel consisting of three union members and three industry arbitrators, and thus knew that its competitors—*i.e.*, other industry players—would be on the panel. *Id.* at 45-46.

Here, the opposite is true—UBS bargained for a FINRA panel consisting of three *qualified* arbitrators, selected in reliance on their extensive and mandatory disclosures under FINRA rules. UBS was not "on notice when it signed the contract" agreeing to FINRA arbitration that arbitrators would lie on disclosures, make material omissions, or be subject to permanent disqualification. UBS therefore could not have raised those issues at the arbitration hearing itself, and has not waived its ability to challenge the award now.[2]

Reasonable due diligence does not require UBS to search through bankruptcy records and state court decisions to determine whether every potential arbitrator in every case lied on their questionnaires. Such a rule would be inconsistent with the purpose of arbitration: promoting streamlined dispute resolution based on reliable, bargained-for rules. *See, e.g.*, *Bacardi Int'l Ltd.*, 719 F.3d at 9. Because UBS was affirmatively misled into believing that Meek and Wright were qualified and impartial arbitrators, the egregious misstatements and omissions at issue here could not "have been raised at the arbitration proceedings." *JCI*, 324 F.3d at 51.

---

[2]   As set forth *infra*, the facts here are materially different than in *AEELA*, a case to which Respondents devote substantial, but unfounded, attention. There, none of the purported arbitral "conflicts," even if true (and UBS has no reason to think that they are), would have automatically disqualified any of the arbitrators in that case, and the petitioners in that case do not claim otherwise. *See, e.g.*, *Asociación de Empleados del Estado Libre Asociado de P.R. v. UBS Fin. Servs., Inc.*, Civ. No. 16-02237 (PAD), ECF No. 1-3, ¶ 15.

## II. The Vacatur Standard Is Met Here, Unlike In *AEELA*

Respondents note that the standard for vacating an arbitration award is a high one. Opp. at 5. UBS agrees. But the egregious facts of this case meet that standard. Indeed, Respondents represent to the Court that 20 panels (out of the 23 FINRA arbitrations that were fully adjudicated) have rendered some sort of award against UBS. *See* Opp. at 4 & n.4. Yet this is the *first time* that UBS has moved to vacate an arbitration award. It does so because this is the rare case in which vacatur is warranted.

Respondents likewise dwell on the fact that UBS has opposed vacatur of the arbitration award in *Asociación de Empleados del Estado Libre Asociado de Puerto Rico v. UBS Fin. Servs., Inc.*, Civ. No. 16-02237 (PAD) ("*AEELA*").[3] *See* Opp. at 2, 6-7, 10-11, 20, 23-26, 29-31. But that case is fundamentally different, and the differences show why vacatur is proper here.

In *AEELA*, unlike here, there is no claim that any of the arbitrators engaged in any conduct giving rise to permanent disqualification. Nor is there any claim that any of the arbitrators made a misrepresentation or material omission in their arbitrator oath. For that reason, AEELA, unlike UBS here, does not even invoke Section 10(a)(3). The purported nondisclosures about which AEELA complains are demonstrably inconsequential (and therefore did not require disclosure under FINRA Rule 12405). As to one of the two arbitrators at issue, AEELA alleged that he failed to disclose that he briefly acted as a registered agent (for service of process) for an investment corporation that had no connection, direct or otherwise, to UBS or any matter at issue in the arbitration. That stale, irrelevant relationship was so de minimis that the arbitrator had long forgotten that it had ever occurred, as he stated on the record in a separate,

---

[3] As this Court knows, UBS also moved to confirm that award before that motion to vacate was filed. *See UBS Fin. Servs. Inc. v. AEELA*, Civ. No. 16-02017 (GAG).

unrelated arbitration. *See AEELA*, ECF No. 20-3 (excerpt of *Márquez v. UBS Fin. Servs. Inc.* (FINRA No. 13-03470) transcript). Indeed, FINRA, which takes allegations of potential or perceived bias seriously, has since evaluated the purported "nondisclosure" of that irrelevant information and found it insufficient to disqualify that same arbitrator from participation in another unrelated panel. *See AEELA*, ECF No. 30. As to the other arbitrator at issue, AEELA alleged that he failed to disclose: (1) that UBS held a "significant" interest in his former employer (in reality a smaller-than-1% stake not actually owned by UBS but instead held for its clients' benefit); (2) that UBS "administer[ed]" his former employer's retirement plan (a claim that is incorrect and easily rebutted by publicly available documents); and (3) that UBS was a client of his employer (AEELA did not allege though that the arbitrator ever had any knowledge of that engagement, which had ended in 2013, years prior to the arbitration). Even if any of these claims were true, none of them would give rise to permanent disqualification based on direct misrepresentations in response to mandatory FINRA disclosures.

This case is completely different. Meek concealed, in response to a direct question on the subject, the fact that a court had found her to have committed fraud, which permanently disqualifies her from serving as a FINRA arbitrator, as well as the fact that she filed for bankruptcy, which would have led UBS to the finding of fraud. Wright concealed, in response to a question requiring her to disclose related actions, that she aspired to lead a securities class action, pursuing claims under very similar causes of action and legal theories as Vizcarrondo. This conduct—present here and not in *AEELA*—undermined the arbitral process the parties agreed to, and is what requires vacatur under 9 U.S.C. § 10.

Respondents' attempt to invoke the case law cited by UBS in *AEELA* fares no better. There is no dispute that violations of the FINRA rules are not *per se* grounds for vacatur. *See*

Opp. at 9-11 (citing, inter alia, *Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584 (2d Cir. 2016)).  That principle is dispositive in *AEELA* because AEELA seeks vacatur based (among other meritless reasons) on minor, supposed deviations from FINRA arbitration procedures.  *See, e.g.*, *AEELA*, ECF No. 1-3, ¶ 15.  But here, the violations at issue go to the core of the parties' bargain and the basic fairness of the proceeding:  Meek and Wright made material misstatements and omissions in response to questions in their oaths, violating key rules that are the backbone of the arbitrator-selection process, and, in Meek's case, concealing an actual ground for permanent disqualification as an arbitrator.  The violations here therefore support vacatur, even under Section 10's high standard.  *See Move, Inc. v. Citigroup Glob. Mkts., Inc.*, 840 F.3d 1152, 1158 (9th Cir. 2016) (finding arbitrator's violations of FINRA disclosure rules met Section 10's standard for vacatur).  Respondents' focus on *AEELA*, and on cases cited there that are plainly inapposite here, reflects a failure to grapple with UBS's arguments in *this* case.

## III. Respondents Fail To Rehabilitate The Arbitrators Or Distinguish The Case Law

The egregious nature of the arbitral misconduct at issue here and the relevant case law both compel vacatur.  Respondents first try to redeem Meek, including by disparaging the attorney whom Meek defrauded.  Opp. at 14-22.  But the facts of the Meek Fraud Action are clear:  A jury found Meek guilty of fraud; Meek did not appeal the finding of fraud but instead specifically "acknowledge[d] the jury's respective findings of fraud and actual damages" (and appealed only the exemplary-damages award); and the Texas Court of Appeals affirmed the fraud judgment, reversing only the exemplary damages on legal grounds.  *See* Pet. ¶ 37 (citing *Meek v. Bishop Peterson & Sharp, P.C.,* 919 S.W.2d 805, 807, 810 (Tex. Ct. App. 1996)).

Respondents appear to suggest that the Texas Court of Appeals somehow reversed the jury and conducted its own fact-finding regarding fraud, *see* Opp. at 16, but that is simply untrue.[4]

Respondents' creativity also fails with respect to Meek's affirmative misstatement about her bankruptcy. *See* Opp. at 18. Respondents do not (because they cannot) argue that "no" somehow meant "yes." Instead, they argue that Meek's misrepresentation did not conceal a conflict of interest—something UBS has not argued—and that the concealed facts did not disqualify Meek from rendering a fair determination. *See* Opp. at 18-22. On that point, the FINRA rules are clear. An adverse finding of fraud permanently disqualifies an arbitrator. *See* FINRA *Disqualification Criteria*. And though a personal bankruptcy in and of itself is not a permanent disqualifier, *lying* about a personal bankruptcy, in response to a direct question, is. *Id.* Here, Meek's misrepresentation was especially flagrant, as it allowed Meek to conceal the underlying fraud finding that precipitated the bankruptcy, which if known would have immediately and permanently disqualified her from ever acting as a FINRA arbitrator. *Id.* The involvement of an arbitrator who would have been immediately disqualified, had she not concealed the disqualifying information, is ground for vacatur. *See Move*, 840 F.3d at 1158 (reversing district court and vacating award because the participation of an arbitrator who failed to make material disclosures prejudiced petitioner); *Mun. Workers Comp. Fund, Inc. v. Morgan Keegan & Co.*, 190 So. 3d 895, 923 (Ala. 2015) (failure to disclose violated arbitrator's duty and FINRA regulations and warranted vacatur of award).

As for Wright, Respondents hardly attempt to rehabilitate her misconduct. They declare that the concealed *Teradyne* litigation and Wright's role as a proposed class plaintiff are

---

[4] Respondents also claim error in the trial court's jury instructions in the Meek Fraud Action. *See* Opp. at 16-17. Respondents cannot now wish away the fact of an actual judgment of fraud against Meek by raising arguments that Meek herself never did.

"unrelated" to this case because that action "did not involve any broker-dealer or FINRA member" and the "claims, parties, causes of action, time frame, facts, legal theories and counsel were completely different and unrelated." Opp. at 23. But UBS explained how the allegations, causes of action, and legal theories in *Teradyne* and in this case overlap. *See* Pet. ¶ 70 (describing how both Wright and Vizcarrondo brought claims under federal securities law on the theory that defendants allegedly concealed material facts about, and artificially bolstered the market for, the relevant securities). And not only did Wright purposefully omit her active involvement in the *Teradyne* case, she affirmatively misled the parties by mentioning only her involvement as a third-party witness in another, unrelated securities class action (causing UBS to believe that Wright had disclosed all her prior involvement in securities litigation). Respondents' other contentions—that the parties and counsel are different, for example—are both true and irrelevant. Respondents' only legal support for their position that Wright's nondisclosure does not meet the vacatur standard is an unpublished California decision that deals with a conflict of interest based on a party relationship. Opp. at 24. That case is inapposite to the facts here, and Respondents appear to cite it simply because it contains the phrase "class action." *Id.* (citing *Rosen Capital Partners LP v. Merrill Lynch Prof'l Clearing Corp.*, 2013 WL 428460 (Ca. App., 2 Dist. Feb. 5, 2013)).

Finally, Respondents make little effort to distinguish factually similar cases that support vacatur. There is no explanation, for example, of how the arbitrator's disqualifiable illegal activity in *Athena Venture Partners* is distinguishable from Meek's disqualifiable fraud finding. *Goldman, Sachs & Co. v. Athena Venture Partners, L.P.*, No. 13-MC-130, 2013 WL 3955136, at *8 (E.D. Pa. Aug. 1, 2013) (vacating award issued by panel including arbitrator who concealed disqualifiable conduct), *rev'd on other grounds*, 803 F.3d 144 (3d Cir. 2015). Nor is there

recognition that *Municipal Workers Compensation Fund* rebuts Respondents' oft-repeated assertion that nondisclosures can never justify vacatur. *Mun. Workers Comp. Fund, Inc.*, 190 So. 3d at 923 (vacating for failure to make required FINRA disclosures). Respondents assert that the circumstances here are different, but they never explain how.

Most damning is Respondents' failure to distinguish *Move*. *Move* is the most factually similar case identified by either party. There, the arbitrator committed conduct, like Meek's fraud, for which he could be "immediately removed . . . from [FINRA's] roster" and "permanently disqualified . . . from serving as a FINRA arbitrator." 840 F.3d at 1159. The Ninth Circuit reversed the district court's denial of vacatur because the parties "agreed to arbitrate their multi-million dollar dispute before a panel of three *qualified* arbitrators as provided by FINRA's rules and regulations," but "the parties' rights to such a proceeding were prejudiced by the inclusion of an arbitrator . . . who should have been *disqualified from arbitrating the dispute in the first place*." *Id.* (emphasis added). The Ninth Circuit held that the disqualified arbitrator's "participation was itself prejudicial." *Id.* Here, had Meek not actively concealed the fact that a jury found her guilty of fraud—a finding she acknowledged to the appellate court—she would have been immediately disqualified from ever acting as a FINRA arbitrator, on this or any other panel. As in *Move*, Meek's participation here "was itself prejudicial" and is alone sufficient grounds for the Court to grant UBS's petition to vacate. *Id.* Respondents say only that the *Move* court's determination was "based upon the specific facts of that case," without explaining how this case is different. Opp. at 27. They declare "[t]here is no similar 'purposeful and material deception'" here without explaining how Meek's lies about her bankruptcy filing and the fraud finding are not exactly that. *Id.* at 28. *Move* is precisely on point. As in *Move*, vacatur is warranted here.

## CONCLUSION

UBS respectfully requests that this Court enter an order granting the Petition and remanding for a full and fair hearing before three new, qualified, and impartial arbitrators.

Dated: February 14, 2017
San Juan, Puerto Rico

Respectfully Submitted,

/s/ Roberto C. Quiñones-Rivera
Roberto C. Quiñones-Rivera
(USDC-PR No. 211512)
MCCONNELL VALDÉS LLC
270 Muñoz Rivera Ave.
Hato Rey, PR 00981
Tel: (787) 250-2631
Fax: (787) 759-8282

-and-

Peter J. Macdonald (*pro hac vice*)
Ross E. Firsenbaum (*pro hac vice*)
Adriel I. Cepeda Derieux (*pro hac vice*)
WILMER CUTLER PICKERING
 HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 230-8800
Fax: (212) 230-8888

*Attorneys for Petitioners UBS Financial Services Inc. and UBS Financial Services Incorporated of Puerto Rico*